UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GARY MAXWELL, | ) | CASE NO. 5:19CV837 |
| Plaintiff, | ) | |
| vs. | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| | ) | **OPINION AND ORDER** |
| FCA US LLC, | ) | |
| Defendant. | ) | |

Pending before the Court is a motion for summary judgment filed by Defendant FCA US LLC ("FCA"). Plaintiff Gary Maxwell has opposed the motion, conceding two of his four claims, and FCA has replied in support. Upon review, FCA's motion for summary judgment is GRANTED.

I. **FACTS**

Gary Maxwell is a former FCA employee who worked most recently as a checker and packer at the Cleveland Parts and Distribution Center ("Cleveland PDC") in Streetsboro, Ohio. Doc. 46 at 1. Maxwell was a member of the United Automobile, Aerospace, Agricultural Implement Workers of America, Amalgamated Local Union No. 573 ("UAW"). *Id*. The terms of his employment were governed by a collective bargaining agreement ("CBA") between FCA and UAW. *Id*.

Maxwell alleges discrimination by FCA related to his June 2015 termination for violation of FCA's attendance policies. Maxwell had accrued seven unexcused absences and after the seventh, he was terminated on June 8, 2015. Maxwell was visibly agitated during the termination hearing. After his termination, Cleveland PDC officials were informed by Gary Sitosky, a local

1

UAW representative, that Maxwell made threats against two local union members: the local UAW president Michael Kalman and UAW chairman Jimmy Jones. Upon the discovery of this information, Maxwell's termination classification was changed from a violation of the attendance policy to termination for the threats to Kalman and Jones per FCA's workplace violence prevention policy. Maxwell denies making any of the statements reported to FCA.

Following termination, Maxwell's unexcused absences were changed to excused absences after submission of documentation and verification with Sedgwick, the company that FCA utilizes to monitor attendance and resolve attendance matters at Cleveland PDC. Doc. 50 at 1. However, due to the alleged threats reported to Cleveland PDC officials, Maxwell's termination was not revisited. UAW worked to get Maxwell reinstated and offered two opportunities for Maxwell to sign conditional reinstatement letters, which would allow Maxwell to return to his work under the terms of the conditional reinstatement. Maxwell refused to sign either of the letters and his termination remained in place as he believed that signing either letter was an admission of making the threats.

II.   **PROCEDURAL HISTORY**

Maxwell filed his first complaint on October 10, 2017 in state court. The complaint was removed to this Court, and Maxwell voluntarily dismissed the Complaint. Maxwell filed his second Complaint on April 15, 2019, alleging disability discrimination under Ohio Revised Code § 4112, violation of the Family Medical Leave Act ("FMLA"), breach of verbal contract, and promissory estoppel. In his answer to FCA's motion for summary judgment, Maxwell consented to summary judgment regarding the breach of verbal contract and promissory estoppel claims. Doc. 50 at 14. Thus, only the O.R.C. § 4112 and FMLA claims require this Court's consideration.

III. **LEGAL STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The burden on the nonmoving party is to show, through the use of evidentiary materials, the existence of a material fact which must be tried. *Id*. The court's inquiry at the summary judgment stage is "the threshold inquiry of determining whether there is the need for a trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

The Court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex*, 477 U.S. at 324. The nonmoving party must oppose a proper summary judgment motion "by any kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves ..." *Id*. Rule 56(c) states, "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law."

IV. **LAW AND ANALYSIS**

    A. **Does the Contractual Limitation Period Bar Plaintiff's Claims Entirely?**

1. **The Limitation Period is Reasonable**

FCA argues that the statute of limitations included in Maxwell's original employment contract precludes all claims presented against them. In relevant part, the contract reads:

> I agree that any claim or lawsuit arising out of my employment with, or my application for employment with, Chrysler Corporation or any of its subsidiaries must be filed no more than six (6) months after the date of the employment action that is the subject of the claim or lawsuit. While I understand that the statute of limitations for claims arising out of an employment action may be longer than six (6) months, I agree to be bound by the six (6) month period of limitations set forth herein, and I waive any statute of limitation to the contrary.

Maxwell Dep. 83: 18-22; *see also* Maxwell Dep., Ex. D. FCA claims that the last employment action between the parties occurred on June 8, 2015, the day of Maxwell's termination. The first filing with any court regarding this employment action was filed on October 10, 2017. Thus, FCA contends, all of Maxwell's claims against FCA are barred by the parties' contractual statute of limitations. Maxwell maintains that this waiver does not apply to his FMLA claim and that the waiver was invalid with respect to his state law claims. Maxwell conceded that a six-month contractual statute of limitations is not inherently unreasonable. However, Maxwell argues that the factors articulated in *Walker v. Ryan's Family Steak Houses, Inc*., 400 F.3d 370, 381 (6th Cir. 2005), invalidate the contractual waiver.

2. **Knowing and Voluntary Waiver**

Maxwell argues that he should evade application of the shortened statute of limitations period because his waiver was not knowing and voluntary. To determine whether a waiver of a statutory limitation period was knowing and voluntary, a court must consider: (1) the plaintiff's experience, background, and education; (2) the amount of time the plaintiff had to consider whether to sign the waiver, including whether the plaintiff had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; and (5) the totality of the

4

circumstances. *Id.* Maxwell makes a plethora of arguments that he did not knowingly and voluntarily waive his rights.

However, Maxwell points to no evidence in the record that this Court can consider as supporting an unknowing and/or involuntary waiver. While Maxwell notes that he did not complete high school, he makes little effort to evaluate the remaining factors. There is nothing in the record to suggest that Maxwell's education inhibited his ability to understand the terms of the waiver. Indeed, Maxwell makes no such contention. Moreover, there is nothing in the record to suggest that Maxwell was rushed in his review of the waiver or that the waiver lacked clarity. Accordingly, his attempts to invalidate his waiver do not create a genuine issue of material fact.

Maxwell next argues in the alternative that because he filed a claim with the National Labor Relations Board on October 2, 2015, he had "fulfilled" the terms of the waiver and the six-year O.R.C. 4112 statute of limitations should control his claims. Doc. 50 at 8. Maxwell cites *Thompson v. Fresh Products, LLC* to support his claim. In *Thompson*, Plaintiff brought suit under the ADA and ADEA alleging discrimination in her termination. *Thompson v. Fresh Prod., LLC*, 985 F.3d 509, 519 (6th Cir. 2021). The 6th Circuit held that under the ADA and ADEA, the claims brought by the plaintiff were not subject to a contractual waiver of a statute of limitations in her employment agreement. *Id*. There is no mention of the fulfillment of a waiver in the *Thompson* opinion, and the claim was filed under a different federal act than in the present case. Thus, Maxwell's argument that he has met the timeframe by virtue of his NLRB complaint has no support in precedent. Moreover, Maxwell has offered no legal support to suggest that his filing with the NLRB tolled the contractual statute of limitations or otherwise inhibited his ability to file a lawsuit within the agreed-upon timeframe.

Viewing the terms of the waiver in a light most favorable to Maxwell, this Court finds the signing of the waiver in the employment application was knowing and voluntary under the *Walker* factors. Therefore, even when viewing the evidence presented most favorably to the Maxwell, this Court finds for FCA on all of the state law claims presented against them under ORC § 4112, as Maxwell has knowingly and voluntarily agreed to shorten his statute of limitations to six months and his first Complaint was filed more than 2 years after Plaintiff's termination.

### 3. The Waiver's Applicability to Plaintiff's FMLA Claim

Maxwell further argues that the contractual waiver cannot apply to his FMLA claim. Maxwell relies on other district courts that have ruled against contractual waivers' ability to negate FMLA claims. *See Lewis v. Harper Hosp.*, 241 F. Supp. 2d 769, 772 (E.D. Mich. 2002); *Madry v. Gibraltor Nat. Corp.*, No. 10-13886, 2011 WL 1565807, 3 (E.D. Mich. Apr. 25, 2011); *Henegar v. Daimler-Chrysler Corp.*, 280 F. Supp. 2d 680 (E.D. Mich. 2003), *overruled by Byron v. St. Mary's Med. Ctr.*, No. 11-13445, 2012 WL 3966090 (E.D. Mich. Sept. 11, 2012). The Sixth Circuit has yet to rule on the applicability of a contractual waiver of the FMLA statute of limitations, but several district courts have ruled against these waivers in favor of public policy.

Because Maxwell's claim (discussed below) fails on the merits, the Court has no reason to take a formal position on the applicability of the waiver to FMLA claims.

### B. Plaintiff's Breach of Contract and Promissory Estoppel Claims

Plaintiff has conceded that he cannot sustain his burden under Civ. R. 56 for his breach of contract and promissory estoppel claims. Doc. 40 at 14. Therefore, these claims are dismissed with prejudice.

### C. Plaintiff's State Disability Discrimination Claim is Preempted by the LMRA

6

FCA argues that Maxwell's state law discrimination claims are preempted by section 301 of the Labor Management Relations Act ("LMRA"). The two facets of Maxwell's O.R.C. 4112.02 claim are a seniority of job placement question and discrimination claim regarding his attendance-based termination. Doc. 53 at 5.

The Sixth Circuit has articulated a two-prong test to determine whether a state law disability claim is preempted by the LMRA under section 301. This court must determine (1) whether the state law claim requires interpretation of the CBA terms and (2) whether the right claimed by the plaintiff exists through state law or solely through the contractual agreement. *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216 (6th Cir. 1994). To survive preemption, the claim must require no interpretation of the CBA's terms and the right must be borne entirely of state law. If the claim requires interpretation of the CBA or if the right claimed by the plaintiff is borne from contractual obligations, the claim is preempted by section 301.

Maxwell makes arguments that both support and contradict his claim that interpretation of the CBA is not required to prove or disprove his state law claims. However, this Court need only review Maxwell's opposition to the motion for summary judgment to find whether the CBA is required. Maxwell argues that FCA's actions regarding his termination due to the threats reported to upper management were not proper, legitimate, or nondiscriminatory. Doc. 50 at 17-18. Maxwell does not suggest how this Court should determine what the proper, legitimate, and nondiscriminatory action should have been. Instead, only an analysis of the CBA could show whether Maxwell's arguments against FCA's decisions have any merit.

Thus, Maxwell's state law claims require an analysis of the CBA and are therefore preempted by section 301 of the LMRA.

7

D.     **Maxwell's FMLA Claim Fails on the Merits**

    1.     **The *Prima Facie* Claim**

FCA argues that Maxwell cannot meet the prima facie elements of his FMLA claim. To establish a prima facie case of FMLA retaliation, Maxwell must show that: 1) he was engaged in an activity protected by the FMLA; (2) the employer knew that he was exercising his rights under the FMLA; (3) after learning of the employee's exercise of FMLA rights, the employer took an employment action adverse to him and (4) there was a causal connection between the protected FMLA activity and the adverse employment action. *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012).

Maxwell argues that he was engaged in an activity protected by the FMLA but brings no evidence to support this fact. Further, Maxwell's testimony contradicts this claim, as he stated in his deposition that he had made the claim under FCA's sickness and accident plan because he believed that his alleged pneumonia was not covered under his FMLA leave.[1] Maxwell Dep. 124:21-125:1-3.

Maxwell contends that he had informed FCA of his FMLA claim due to a purported request for FMLA leave that Plaintiff made to Sedgwick, not directly to FCA. Maxwell brings no evidence to support that FCA knew, or would have any reason to know, that Maxwell had made the requests at the time of his termination. In fact, Maxwell never used the call-in attendance service, nor did he directly notify FCA.

Maxwell then purports that the FMLA claim made on May 5, 2015 was the basis for his alleged retaliatory firing. FCA argues that they had heard and approved other FMLA requests from

---

[1] Maxwell had taken intermittent FMLA leave for a heart condition. While Maxwell's complaint suggests some portion of his absence related to pneumonia should have been covered, there is no evidence that he ever sought such FMLA leave for this particular condition.

8

Maxwell, and he had not been terminated. Doc. 53 at 9. Further, Maxwell does not address the fact that he did not accrue attendance occurrences under FCA's policy due to the absences themselves, but rather that he did not comply with the call-in procedures required by the CBA. In short, Maxwell has submitted no evidence of any kind that could demonstrate that there was a causal link between his firing and the alleged FMLA claim. The sole evidence before the Court indicates that Maxwell was terminated because he did not call in his absences.

Maxwell's argument in the alternative -- that the two conditional offers of reinstatement constitute retaliatory actions -- similarly fails for lack of evidence. Maxwell was offered his position back twice and declined, indicating that he declined because he thought that signing the documents was akin to an admission that he had made the threats reported to FCA. Maxwell has offered no factual or legal support for his assertion that the conditional offers of reinstatement were retaliatory, let alone evidence that they were in any way related to his FMLA leave. Accordingly, his claims must fail.

V.  **CONCLUSION**

For the reasons stated above, this Court GRANTS Defendant's Motion for Summary Judgment. Judgment on the Complaint is hereby entered in favor of Defendant.

IT IS SO ORDERED.


Date:  March 3, 2022                              /s/ John R. Adams
                                                  JUDGE JOHN R. ADAMS
                                                  UNITED STATES DISTRICT JUDGE